Anderson, J.,
delivered the opinion of the court.
Joint creditors as such have no lien upon the partnerehip property. They have no equity to appropriate it to their debts. If they proceed against the firm to a judgment at law, they may levy an execution upon the partnership effects, or upon the separate property of the partners, and thus acquire a lien upon the partnership property and also the separate property of the copartners. Their remedy is a legal one, and until the statute authorizing creditors in certain cases to sue in equity before they obtain judgment, &c., they must exhaust their remedy at law before they are entitled to invoke the assistance of a court of equity, and can only reach the partnership effects before they have acquired a lien upon them through the equities of the copartners.
Each partner has an equity to have the social effects appropriated as far as necessary to the payment of the joint debts towards the discharge of his individual liability for them. He has consequently an equity to prevent their diversion from that object by his copartner to his separate use. But he may bona fide, and for a valuable consideration, transfer the partnership effects to his copartner. By so doing he relinquishes his aforesaid equity, and cannot afterwards insist that they shall be subjected to the payment of the joint debts. The joint creditors in this case seek to enforce the aforesaid equity of the copartners.
The appellant, Grasswitt, contends that his co-partners, the Roysters, relinquished this equity by a stipulation in the articles of copartnership, whereby Ms co partners transferred to him the partnership effects to be Ms property until he was repaid the money he advanced. And his claim is to be repaid the money he *25 ^advanced out of the fund in question, which he claims as his separate property. The clause in the articles of co-partnership, upon which this claim is founded, is as follows: “Itis understood that the said M. W. Grasswitt shall contribute, for the purposes of the business, such an amount of capital as he may be able to command, which, when contributed, is to be placed to his credit on the books of the concern, to be used only in conducting the business, and to bear interest of six per cent, per annum. Should the said J. B. Royster and J. J. Royster (the other parties to the agreement), or either of them, make any contribution of capital, the same to be placed to their credit on the books of the concern, and to bear a like interest. But until they shall do so (this is the language relied on as making the transfer), and in order to protect the said Grasswitt against any losses that may arise from the business, hereby pledge and assign to him all their present and future interest in the stock, machinery, fixtures and claims of the concern; this assignment to be relieved and abated as the respective interests of the said J. B. Royster and J. J. Royster in the profits of the business will justify.”
At the date of this agreement, the 2tst of January Í870, the company had no effects. At least it was after that date that the purchase of tobacco fixtures was completed by giving notes and a deed of trust to secure their payment to James Gunn, from whom they were purchased, to wit: on the first of February 1870. But J. B. Royster testifies that the said purchase was contemplated about simultaneously with a verbal agreement to form the partnership. Subsequent to the purchase of the fixtures, &c., to wit: on the 23d of February 1870, Grasswitt contributed or advanced *26 $2,100, and the same amount on the 5th of March fol- . lowing.
By the articles of co-partnership, the Roysters do' n0+ in terms, undertake to repay or to refund to Grasswitt the money to be advanced by him. That does-not seem to have been contemplated. On the contrary, when contributed, it was to be placed “to his credit on the books of the concern,” to be used only in the business, and he was to receive six per cent, interest. And a like provision is made with regard to it, should the Roysters, or either of them, make a contribution to the capital. Nor do they pledge or assign the partnership effects then owned or to be acquired to secure the repayment of th'e same—that we have seen was not contemplated—but for the purpose of protecting said Grasswitt “against any losses that may arise from the business.” And this pledge or assignment was to be abated or relieved (which seems, though not clearly expressed, to have been their meaning) accordingly as the Roysters may make contributions. If their contributions were equal to Grasswitt’s, they were entitled to be relieved from the pledge or assignment; if not equal, then to an abatement from the' pledge, in proportion to their contributions.
The partnership effects, shortly before the dissolution, were sold under the deed of trust to Gunn, and applied to the payment of rents, &e., due from the copartnary and to the debt due to James Gunn, from whom they were purchased, which left a balance off $1,873.12, which, together with the interest thereon, is the fund in dispute. Grasswitt claims that he is entitied to it under the co-partnership agreement; and the joint creditors contend that it should be applied to the payment of ’their debts. Has Grasswitt the right tO' the conversion of this fund, under the agreement afore *27 said, to his separate use? or, is it applicable to the payment of the joint debts?
The court is of opinion, that the unrecorded tory agreement between copartners, such as is herein-before described, pledging or assigning all the partnership effects, then owned or which should afterwards be acquired, to indemnify or save harmless one of the partners, who has advanced money to carry on the business, the property never having passed to the separate possession of the pledgee or assignee, but remaining in the uninterrupted possession of the copartnary, is fraudulent in law as to creditors without notice. In this case the partners themselves seemed to have regarded their agreement as only binding inter se. The property was bought by the copartners, and was held and treated by them as copartnership property after the said agreement wa3 made; and shortly before the dissolution was conveyed by them (including Grasswitt) in trust as partnership property; and in their correspondence with the joint creditors, they (including Grasswitt) gave assurance that they had done nothing which would compromise their interests; and never an intimation made that the partnership effects • were held by one of the copartners in pledge, or by assignment for his indemnity; and the court is of opinion, that to give effect to said agreement now, so as to convert the fund in question to the separate use of Grasswitt, and to divert it from the payment of the joint debts, all the partners being insolvent, and there being no other partnership property, would be fraudulent as to the joint creditors. And although the Eoysters may have no equity against Grasswitt, to require the application of the partnership effects to the payment of the joint debts, and the joint creditors, therefore, can have no relief in equity through their- *28 equities, yet, under the statute, a court of equity will give aid to a creditor even before he has obtained a or decree for his claim, to avoid an assign-men* or transfer of, or charge upon, the estate of his debtor, which he might institute after obtaining such judgment or decree. (Code of 1860, chap. 179, § 2, p. 736). These creditors have, therefore, in this case, though not having obtained judgment, the right to seek relief in a court of equity.
The court' is further of opinion that the appellants cannot maintain their claim under the deed of trust to Lottier to secure a note for $4,500, made payable to their own order. Said note was never negotiated. It was never ordered to be paid to Grasswitt, or delivered to him. It came into his possession without the consent of his copartners, and he is not entitled to it. The said note creates no liability without negotiation, and Grasswitt nor either of his copartners could now negotiate it; and consequently the deed made to secure it is a nullity. Upon the whole, the court is of opinion that the assignment of Grasswitt in bankruptcy does not invest his assignee with the fund in question as the separate property of Grasswitt, but that it is liable to the joint debts of the copartnership; and that the decree of the chancellor must be affirmed.
Decree arrirmed.